# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORDINA CARPENTER, | Case No. 1:13-cv-00984-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | (Doc. No. 1) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Flordina Carpenter ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") benefits pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 10.)

**FACTUAL BACKGROUND**

Plaintiff was born on December 30, 1959, and has a 12th grade education. (Administrative Record ("AR") 41.) On September 21, 2009, Plaintiff filed an application for DIB alleging disability due to body trauma, neck problems, depression, and back problems. (AR 270-73; 296.) Plaintiff alleges that she became unable to work on September 20, 2007. (AR 270.)

**A.    Relevant Medical Evidence**

Plaintiff injured her neck in a work-related accident in 2002, and suffered repetitive injury to her right shoulder which led to right-shoulder surgery in 2002. Plaintiff was treated by Sanjay J. Chauhan, M.D., for her neck injury that continued to cause pain. (Administrative Record ("AR") 596-609.) According to Dr. Chauhan's treatment notes between August 2007 and April 2008, Plaintiff consistently showed normal motor strength; normal gait with some spasms, tenderness and diminished range of motion in the cervical spine; positive Spurling's sign in the right shoulder, scapular and upper arm pain; negative straight leg raise at 90 degrees; mild tenderness in the shoulders; and negative impingements sign. (AR 599-600.) A cervical spine magnetic resonance imaging scan ("MRI") performed in April 2008 revealed a 1mm bulging disc at C6-7 with mild hypertrophy without significant foraminal stenosis or "probably just mild foraminal stenosis," slightly greater on the left; and a 2 mm broad-based disc protrusion at C6-7 only partially indenting the ventral thecal sac without significant stenosis, and only mild left foraminal stenosis. (AR 605.) Dr. Chauhan interpreted this MRI as mostly stable, and without significant abnormality requiring surgery. (AR 607.) Dr. Chauhan's treatment recommendations consisted of pain medication and home exercises. (AR 602.)

On August 30, 2007, state agency reviewing physician A.M. Khong, M.D., opined that Plaintiff retained the functional capacity to perform medium work,[2] but noted she was limited in her ability to reach in all directions. (AR 556-60.)

---

[2] Medium work is defined as occasionally lift 50 pounds and frequently lift 25 pounds; stand and/ or walk for six hours in an eight hour day; and sit for six hours in an eight hour day. 20 C.F.R § 404.1567(c).

On August 2, 2007, psychiatrist Latif Ziyar, M.D., wrote a letter regarding Plaintiff's mental condition. He noted she had been initially assessed in November 2005 and had last visited Fresno County Mental Health on July 30, 2007, for bipolar disorder and depression. He opined that she was capable of working. (AR 637.)

On February 12, 2008, Plaintiff was examined by Perminder Bhatia, M.D., for a neurological pain evaluation. (AR 595-95.) Dr. Bhatia noted Plaintiff's motor, sensory, and cerebellar findings were normal, as was Plaintiff's gait. (AR 595.) Despite these findings, Plaintiff exhibited 14/18 tender points for fibromyalgia. (AR 728-31.) Dr. Bhatia hypothesized Plaintiff had fibromyalgia, prescribed Lyrica, and recommended Plaintiff return in two weeks. (AR 595.) Dr. Bhatia's records show that Plaintiff did not return for a follow-up visit until December 2011. (*See* AR 730-31.)

On August 28, 2008, Plaintiff sought treatment with Dr. Ziyar related to mental health symptoms. (AR 619.) She presented with complaints of fibromyalgia. (AR 619.) She reported her daughter was leaving home to go to college, and Plaintiff was thinking about looking for a job. (AR 619.) Dr. Ziyar's again assessed bipolar disorder. (AR 619.)

On December 7, 2009, Plaintiff was examined by James A. Nowlan, Jr., M.D., who noted Plaintiff reported "[m]ultiple areas of pain with few objective findings." (AR 654.) Dr. Nowlan opined Plaintiff could stand and walk for six hours in an eight hour day; had unlimited sitting capacity; could lift 25 pounds frequently, and 50 pounds occasionally; and had no postural, manipulative or environmental limitations. (AR 654.)

On December 1, 2011, Plaintiff was examined again by Dr. Bhatia. (AR 730.) Plaintiff reported neck pain that moderately limited her activities and a diffuse headache that was described as incapacitating. (AR 730.) On examination, Plaintiff complained of pain in her elbows and hands, but she denied any anxiety or depression. (AR 730.) Dr. Bhatia noted all normal findings, but diagnosed spasmodic torticollis, cervicalgia, and a depressive disorder. (AR 731.) Dr. Bhatia recommended Plaintiff massage and exercise her neck. If there was no response to this treatment, then they would consider steroid injections into trigger points. (AR 730.)

On January 4, 2012, Plaintiff was seen by David Baker, M.D., for complaints of neck pain. (AR 728.) She described chronic and sharp pain, which was ongoing daily and moderately limited her activities. (AR 728.) On examination, Dr. Baker noted that her cervical spine movements were restricted and tender to palpation. (AR 728.) Dr. Baker prescribed medication, recommended cervical spine exercises, and noted Plaintiff should return for a follow-up appointment in one month. (AR 729.)

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90-93, 96-104.) On April 11, 2012, and May 31, 2012, the ALJ held two hearings on the matter. (AR 31-81.)[3]

**1.  Plaintiff's May 31, 2012, Hearing Testimony**

Plaintiff received vocational training from the Caesar Chavez Adult School, which included a certificate in computers. (AR 42.) While Plaintiff was working at Albertson's grocery store as a butcher block manager for the meat/seafood department, she fell and injured herself. (AR 42.) She returned to work, but she was placed on light duty. (AR 42.) She stopped working at Albertson's in January 2004, and applied for Worker's Compensation benefits. (*See* AR 69.) She did not return to work at Albertson's. She last worked in October 2009 at DiCicco's Restaurant for two days filling in for a waitress who was having heart trouble. (AR 43.) Between 2007 and 2009, Plaintiff applied for work at NAPA auto parts, LKQ, which is an auto distributor, and she looked at part-time work as a waitress, but she "didn't have any luck." (AR 44.) She last looked for work six-months prior to the May 31, 2012, hearing. (AR 44.)

Her shoulder problems cause popping, grinding, and achiness. (AR 46.) She experiences pain upon repetitive use of her shoulders. (AR 53.) She also has pain in her hands and the back of her neck. (AR 45.) In a typical day, Plaintiff performs chores such as vacuuming, dishes, and cleaning, but she must take breaks every 15 to 20 minutes, which last anywhere from 30 minutes

---

[3] A medical expert was unable to appear at the April 11, 2012, hearing, and a rehearing was therefore held on May 31, 2012, at which time Eric Dean Schmitter, M.D., appeared as a medical expert. (*See* AR 33.)

to an hour. (AR 46.)  She is able to shower, get dressed, cook, do laundry, go grocery shopping, and she can lift between 15 to 18 pounds. (AR 46-47.)  She used to garden, but her pain limits her from gardening for more than 30 minutes at a time. (AR 48.)

The pain in her neck is constant, and often is accompanied by headaches. (AR 49.) Lifting, bending, or reaching over her head with her arms aggravates her neck pain. (AR 49.) Keeping her head elevated also causes pain and strains her neck. (AR 50.)  She attempts to perform the home exercises she learned in physical therapy, but the exercises also cause pain. (AR 50.)

Plaintiff estimates she can walk half a block before she has to take a break due to tingling, numbing, and throbbing in her fingers and toes. (AR 51.)  She can sit up to 15 or 20 minutes, but then she must stand. (AR 51.)  She rests during the course of the day due to throbbing headaches and pain in her neck and upper back. (AR 51.)  She struggles to concentrate and is only able to focus or maintain attention for five minutes. (AR 56.)  Although she watches television, she is able to concentrate on it only for five or ten minutes. (AR 56.)

She experiences suicidal thoughts a couple times a month, and the medication she takes for her depression does not help. (AR 54.)  She has problems being around people, and it does not take much to upset or irritate her. (AR 55.)

Plaintiff also noted that she is afflicted by chronic diarrhea three to four times a week, which is accompanied by severe pain. (AR 57.)  It causes a loss of appetite, and she has lost weight as a result. (AR 157.)

### 2. Vocational Expert Hearing Testimony

At the May 31, 2012, hearing, the ALJ solicited testimony from a vocational expert ("VE"). The VE testified Plaintiff's work prior to that at Albertson's is classified by the Dictionary of Occupational Titles ("DOT") as a waitress and is described as light exertional work. (AR 59.) Plaintiff's work at Albertsons is characterized in the DOT as a butcher, and it is considered heavy and skilled work. (AR 59.)

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age and with her education and work history who is able to lift and carry 50 pounds occasionally, and 25 pounds

5

frequently; push and/or pull the same weight; and occasionally reach above shoulder level with the dominant right upper extremity. (AR 59-60.) The ALJ asked the VE whether such a person could perform any of Plaintiff's past work. The VE testified that such a person could perform Plaintiff's past work as a waitress. (AR 60.) The ALJ inquired whether there would be any other alternative work that such a person could perform with those limitations. The VE testified that such a person could perform medium exertional work which includes jobs such as a hand packager, machine packager, and a laundry checker. (AR 60.)

The ALJ posed a second hypothetical, asking the VE to assume all the limitations posed in the first hypothetical but with the added assumption that the person could perform only low-stress work defined as requiring only occasional changes in the work setting. (AR 60.) The ALJ asked whether such a person would be able to perform any of Plaintiff's past relevant work. (AR 60.) The VE testified that all the same responses for hypothetical one would apply to this second hypothetical.

The ALJ then posed a third hypothetical, asking the VE to assume all the limitations of the second hypothetical, but with the added assumption that such a person was precluded from repetitive forceful gripping or handling with the dominant right upper extremity and would be precluded from repetitive forceful overhead use of the dominant right upper extremity. (AR 61.) The ALJ asked whether such a person could perform any of Plaintiff's past work. (AR 61.) The VE responded that no past relevant work would be possible with the limitation precluding forceful gripping and grasping. Thus, the jobs at medium physical demand would not be available, and Plaintiff's past relevant work as a waitress would not be available. (AR 61.)

The ALJ asked whether there would be alternative work that could be performed, and the VE testified that an individual with these limitations would retain the ability to perform sedentary, unskilled work. (AR 61.) The VE testified that light-level jobs that would accommodate a limitation for repetitive, forceful gripping and grasping include packing line worker, garment sorter, and ampoule filler. (AR 62.) The ALJ did not question the VE whether his testimony was consistent with the DOT.

### 3. Testimony of Dr. Eric Schmitter

An orthopedic medical expert, Eric Schmitter, M.D., testified at the hearing after having reviewed Plaintiff's medical records. While sufficient for him to offer an opinion as to Plaintiff's condition, Dr. Schmitter described the orthopedic evidence to support Plaintiff's alleged limitations as "sparse." (AR 35.) He opined that Plaintiff was limited to essentially medium work, citing the modest objective medical evidence during the time period at issue, which was consistent with Dr. Khong's August 2007 opinion. (AR 35, 392, 408, 409, 415, 422.) Although there is evidence of chronic neck pain, Dr. Schmitter described the findings as "modest." (AR 35.) Dr. Schmitter noted that a 2003 report indicated Plaintiff underwent right shoulder arthroscopy, from which she had apparently recovered. (AR 35.) Dr. Schmitter stated that an MRI of Plaintiff's shoulder revealed a partial tear in the supraspinatus tendon. (AR 36, 775.) He noted that Plaintiff underwent electro-diagnostic studies including nerve conduction and EMG tests, which were normal. (AR 36.)

Although fibromyalgia was noted by Dr. Bhatia, there are generally no objective findings from which that diagnosis can be made. Rather, it is a cumulative diagnosis that is made from subjective complaints. (AR 39.) Dr. Schmitter explained many physicians believe that fibromyalgia is a physical expression of depression and does not have a good biological component that is measurable. (AR 39.) Thus, Dr. Schmitter found it difficult to assess Dr. Bhatia's notation of fibromyalgia. (AR 39.) The ALJ asked whether a diagnosis of fibromyalgia would change Dr. Schmitter's assessment of Plaintiff's residual functional capacity, and Dr. Schmitter responded that doctors are now "actually encouraging increased physical activity as a treatment modality" for fibromyalgia. (AR 39.) Thus, a treatment for that condition would involve increased activity, not decreased activity. (AR 40.)

Dr. Schmitter concluded that, from an orthopedic perspective, Plaintiff had multiple somatic complaints without significant orthopedic findings. (AR 36.) He opined that she could lift 50 pounds occasionally, and 25 pounds frequently; stand, walk, and sit six hours out of an eight-hour workday; and had unlimited manipulation ability. (AR 38.)

### 4.     The ALJ's Decision

On June 8, 2012, the ALJ issued a decision, finding Plaintiff not disabled since September 20, 2007. (AR 12-23.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity during the period of her alleged onset date of September 20, 2007 (AR 17); (2) Plaintiff had severe impairments, including degenerative disc disease of the cervical spine, without evidence of radiculopathy or myelopathy, right shoulder strain, status post-surgery, fibromyalgia-type disorder, and major depressive disorder (AR 17); (3) did not have an impairment or combination of impairments that met or medically equaled of the of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 18); (4) had the residual functional capacity ("RFC") to perform medium work, but was limited to occasionally climbing ladders, ropes, or scaffolds, occasionally reaching above shoulder level with the dominant right upper extremity; and performing low stress jobs defined as those requiring only occasional changes in the work setting. (AR 19.) The ALJ also found that Plaintiff was able to perform her past relevant work as a waitress. (AR 22.) The ALJ also determined Plaintiff could perform other work such as hand packager; machine packager; and a laundry checker. (AR 23.) The ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, at any time from September 20, 2007, the purported onset date, through June 30, 2009, the date last insured. (AR 23.)

Plaintiff sought review by the Appeals Council on July 3, 2012. (AR 10). The Appeals Council denied the request for review on April 16, 2013. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### 4.     Plaintiff's Arguments on Appeal

On June 27, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues the ALJ erred in relying on the VE's testimony about alternative work Plaintiff could perform because the testimony conflicted with the DOT, and the ALJ failed to obtain testimony from the VE that established a "reasonable basis" for the deviation from the DOT. Plaintiff also contends the ALJ erred in finding Plaintiff's lay testimony less than fully credible.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A. The Vocational Expert's Testimony Was in Apparent Conflict with the Dictionary of Occupational Titles**

**1. The Parties' Arguments**

The ALJ determined Plaintiff was limited to only "occasional reaching." Considering this reaching limitation, in conjunction with Plaintiff's other limitations, the ALJ asked the VE whether Plaintiff would be able to perform her past work. (AR 60.) The VE testified Plaintiff would be able to perform her past work as a waitress as well as alternative work including that of a packager, machine code packager, and a laundry checker. (AR 60.)

Plaintiff contends the ALJ erred in accepting this testimony because the alternative work identified by the VE involved tasks that are beyond Plaintiff's limitations described by the ALJ's assessment of Plaintiff's RFC. The jobs identified by the VE have corresponding DOT job

10

descriptions that are beyond Plaintiff's abilities. Therefore, the VE's testimony that Plaintiff can perform these alternative jobs is inconsistent with the DOT. Specifically, Plaintiff notes she is limited to only occasional overhead reaching. She argues that "reaching" as defined by the *Revised Handbook for Analyzing Jobs* ("RHAJ") and the Department of Labor ("DOL"), includes "extending hand(s) and arm(s) in any directions." Because overhead reaching is subsumed within the definition of reaching generally, a limitation to overhead reaching is a limitation to reaching generally. As described by the DOT, each job identified by the VE would require Plaintiff to engage in "constant" or "frequent" reaching, but Plaintiff is limited to only *occasional* overhead reaching. According to Plaintiff, the ALJ erred both in failing to inquire whether the VE's testimony conflicted with the DOT, and in failing to address the apparent conflict between the DOT job descriptions of work the VE opined Plaintiff retained the ability to perform and Plaintiff's reaching limitation.

Defendant maintains the VE's testimony does not conflict with the DOT. Instead, the VE's testimony was simply refined to capture Plaintiff's specific limitation to overhead reaching. The DOT includes only a generic "reaching" category for all the jobs it classifies. The DOT is a compilation of "maximum requirements or occupations generally performed," and the "VE . . . may be able to provide more specific information about jobs . . . than the DOT," and essentially did so in this case. (Doc. 19, 7:8-15.) In other words, Plaintiff's limitation to only occasional overhead reaching does not mean that she is restricted from all reaching generally, and the VE offered specific and particularized testimony as to Plaintiff's *actual* limitation i.e., overhead reaching, as opposed to all reaching generally. According to the Commissioner, there is no actual conflict between the VE's testimony and the DOT job descriptions. Rather, the VE testimony is particularized to account for Plaintiff's specific reaching limitation, which is not contemplated by the DOT. As such, even if the ALJ technically erred under Social Security Ruling ("SSR") 00-4p by not expressly asking the VE about any conflict with the DOT, that error was "harmless" because no actual conflict exists. *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 19 (9th Cir. 2007).

### 2. Analysis

The distinction between a claimant's limitation for overhead reaching and the DOT's description of jobs requiring reaching in general was addressed by the district court in *Winder v. Astrue*, No. 12-CV-1048, 2013 WL 489611 (C.D. Cal. Feb. 6, 2013). In *Winder*, the claimant ("Winder") was limited to occasional overhead reaching. *Id*. at *2. The VE testified that Winder could perform the jobs of assembler -- small products, information clerk, and office helper and that this testimony was consistent with the DOT. *Id*. Each job identified by the VE, however, required "frequent" reaching pursuant to the DOT description. *Id.* The district court held there was unresolved potential inconsistency between the VE's testimony and the DOT description requiring frequent reaching. *Id*. The court reasoned it was not clear whether the DOT's general reaching limitation included reaching above shoulder level, which was exactly the sort of ambiguity and inconsistency the ALJ should have resolved with expert testimony. *Id*. at *3. The court concluded that the record did not contain any basis for the VE's deviations from the DOT's general reaching requirements, and the court was unable to determine whether the ALJ properly relied upon the VE's testimony. *Id.* Accordingly, the matter was remanded for further consideration.

Similarly, in *Richardson v. Astrue*, the claimant was precluded from overhead reaching. 11-CV-1593-SP, 2012 WL 1425130, at *3 (C.D. Cal. Apr. 25, 2012). All the alternative work identified by the VE required reaching pursuant to the DOT descriptions, but there was nothing that indicated whether bilateral overhead reaching was a subset of reaching in general. *Id.* at *3. As discussed by the court in *Winder*, the court noted that reaching is defined by the DOT as extending the hands in any direction and that reaching in any direction plainly encompasses overhead reaching. Thus, the court concluded the VE's testimony deviated from the DOT, and the ALJ failed to obtain an explanation for the deviation or even to identify it. *Id.* at *4. To accept VE testimony that deviated from the DOT, the ALJ was required to obtain "persuasive evidence to support the deviation," but the record was "utterly devoid of such evidence . . . or any explanation by the ALJ how she resolved the conflict." *Id*. at *5. The court found the ALJ erred in failing to

12

obtain such an explanation for the deviation, and remanded the matter for further consideration. *Id.* at 6.

Here, like *Winder* and *Richardson*, Plaintiff is limited to occasional overhead reaching, but the jobs identified by the VE are defined by the DOT as requiring frequent or constant reaching. The reasoning of *Winder* and *Richardson* persuade the Court that, at a minimum, there is a potential conflict between the VE's testimony about jobs Plaintiff could perform and the DOT description of those jobs. On its face, the DOT description requiring "frequent reaching" is at odds with Plaintiff's limitation of only "occasional overhead reaching" because overhead reaching is a specific subset of reaching. In other words, testimony that a claimant who is limited to occasional overhead reaching can nonetheless perform frequent reaching is the type of deviation that requires explanation and testimony from an expert. *Prochaska v. Barnhart,* 454 F.3d 731, 736 (7th Cir. 2006). While Defendant is correct that a VE is a competent expert who can resolve such potential conflicts with an explanation, no explanation was offered in this case nor did the ALJ solicit an explanation. Instead, the record contains only the VE's conclusion that Plaintiff can perform work requiring "frequent reaching" despite that she can only perform "occasional overhead reaching." Where an ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *Richardson*, 2012 WL 1425130, at * 5 (citing *Hernandez v. Astrue*, No. CV 10-3142, 2011 WL 223595, at *2-5 (C.D. Cal. Jan 21, 2011)). As concluded by the courts in *Richardson* and *Winder*, this Court finds that remand is required to obtain further VE testimony to resolve the potential conflict with the DOT.

**B.     The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff**

Plaintiff argues the ALJ's only basis for rejecting her testimony was that Plaintiff admitted to looking for work. Plaintiff maintains this is a legally insufficient basis to reject her lay testimony. Defendant contends the ALJ provided clear and convincing reasons for discrediting Plaintiff.

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First,

the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir.2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997).

In assessing Plaintiff's credibility, the ALJ made no finding of malingering but determined that Plaintiff's subjective statements regarding the extent of her symptoms were not entirely credible. As there was no finding of malingering, the ALJ was required to state clear and convincing reasons to support discounting Plaintiff's subjective complaints and credibility.

**2. Analysis**

Plaintiff argues the ALJ improperly weighed Plaintiff's statement at the May 31, 2012, hearing as well as statements to her physicians that she was seeking employment. Plaintiff maintains the ALJ erred in determining that these statements contradicted Plaintiff's assertion that

she was disabled. Rather than detracting from her credibility, Plaintiff asserts her effort to secure employment bolsters her character and credibility. According to Plaintiff, the Social Security Regulations encourage disabled individuals to return to substantial gainful employment, and Plaintiff's attempts to find employment should not be held against her in light of this regulatory policy objective.

Despite Plaintiff's argument, holding oneself out as available for full-time work has been considered inconsistent with allegations of disability. *See Copeland v. Bowen*, 831 F.3d 536, 541 (9th Cir. 1988); *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (the fact that a claimant has sought out employment weighs against a finding of disability). In *Copeland*, the claimant's assertion of disability was found inconsistent with the fact that he left his job because he was laid off and then received unemployment benefits while holding himself out as available for and capable of work. *Copeland*, 831 F.3d at 542. The court concluded this was a sufficient basis to reject a claimant's testimony.

Here, Plaintiff alleges she became disabled in September 2007, yet she reported to Dr. Chauhan in December 2007 that she was frustrated because she wanted to return to work, but she had been unable to find a job. (AR 598.) Plaintiff also reported to Dr. Ziyar in August 2008 that she was "thinking about looking for a job." (AR 619.) Plaintiff testified at the May 31, 2012, hearing that she had continued to look for work since 2007, applying at Smith's Auto as a delivery driver, at NAPA auto parts, and at "LKQ," an auto parts distributor, and also applied for other part-time work as a waitress, but she "didn't have any luck." (AR 44.) She also testified she had last looked for work six months prior to the May 31, 2012, hearing. (AR 21).

The ALJ considered these statements to be inconsistent with Plaintiff's allegation of disability since 2007. As with the claimant in *Copeland*, Plaintiff's statement that she has continued to search for work since 2007 while at the same time contending she is disabled from all gainful work activities is an inconsistency the ALJ was permitted to consider in reaching a credibility determination. Because Plaintiff's continued search for work evidences behavior that is inconsistent with her allegations of disability, the ALJ was entitled to discredit Plaintiff on this ground. Regarding Plaintiff's assertion that her decision to seek work enhances her credibility,

even to the extent Plaintiff's job search efforts are susceptible to a more favorable interpretation, the ALJ's interpretation is reasonable, supported by the record, and therefore entitled to deference. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

Moreover, although Plaintiff maintains the ALJ stated only one reason to discredit Plaintiff's lay testimony, the ALJ's decision reflects several other credibility considerations to support the ALJ's finding that Plaintiff is less than fully credible as to the extent of her symptoms. The ALJ considered Dr. Bhatia's February 12, 2008 treatment note showing Plaintiff reported pain all over her body and in her neck. (AR 594.) Dr. Bhatia diagnosed Plaintiff with fibromyalgia, provided her with samples of Lyrica, and requested that she return in two weeks for follow-up care. (AR 595.) Despite this diagnosis and follow-up recommendation, Plaintiff failed to return for a follow-up visit with Dr. Bhatia until December 2011, nearly four years later. (*See* AR 730.) In assessing credibility, an ALJ is entitled to consider an unexplained failure to seek treatment or follow a prescribed course of treatment. *Tommasetti*, 533 F.3d at 1039. Plaintiff's failure to return for follow-up care with Dr. Bhatia for nearly four years was a proper credibility consideration that provided a clear and convincing basis to reject Plaintiff's lay statements.

The ALJ also considered that the objective medical evidence did not support the extent of Plaintiff's stated limitations. (AR 20.) Specifically, Dr. Schmitter opined that Plaintiff was able to perform medium-exertional level work, which was consistent with the August 2007 opinion of state-agency reviewing physician Dr. Khong. (AR 560.) Plaintiff's April 2008 cervical spine MRI was interpreted to be stable with only mild findings. (AR 605). Dr. Bhatia's February 2008 examination showed normal motor, sensory, and cerebellar findings. (AR 594-95.) The ALJ also noted Dr. Chauhan's progress reports took into consideration Plaintiff's positive Spurling's sign on the right, mild tenderness and spasm, and a lack of muscle atrophy or sensory loss. (AR 597-609). Despite consideration of these symptoms, Dr. Chauhan's findings remained fairly normal overall, and his treatment recommendations were generally conservative consisting of recommendations for home exercise and prescription pain medication. He also specifically noted surgery was not indicated. (AR 608.) While a lack of objective evidence to corroborate the extent of limitations

due to pain cannot constitute a sole basis for rejecting a claimant's pain testimony, it is a basis the ALJ may consider in conjunction with other evidence in the record. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Considering the record as a whole, Plaintiff's statements that she continued to seek employment while alleging disability, her failure to seek follow up care with Dr. Bhatia for fibromyalgia, and the lack of objective medical evidence to corroborate the extent of her pain limitations constituted clear and convincing reasons to discredit her lay testimony.

**C.     Remand is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." (citation omitted)). Here, the ALJ erred in relying on the testimony of the VE which is in apparent conflict with the DOT, and remand is appropriate for renewed consideration of this issue.

17

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Florinda Carpenter and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:     **September 24, 2014**                              **/s/ Sheila K. Oberto**
                                                                                   UNITED STATES MAGISTRATE JUDGE